a difference of views existed in the court as to another question involved in the case, to wit, whether such a tax could be upheld consistently with the constitutional power in the states to create and establish banking institutions, no dissent was expressed to the conclusions of the chief justice on the meaning of the term "direct taxes," and the case must be treated by this court as an unanimous re-affirmation of the doctrine of the supreme court on that subject. The case before us falls clearly within the principles on which these adjudications are founded. Under the constitutional designation of the different kinds of taxation to which resort might be made by congress, a tax upon incomes must be classed among the duties authorized, rather than among the direct taxes. No apportionment is necessary when it is laid, and there is nothing to be done here but to sustain the demurrer to the first count of the plaintiff's declaration, and it is ordered accordingly.

## Case No. 12,965.

### SMEDLEY v. YEATON.

[3 Cranch, C. C. 181.] [1]

Circuit Court, District of Columbia. Nov. Term, 1827.

#### SHIPPING—MASTER—SUPERCARGO.

The master of a vessel, who is also consignee of the cargo, has thereby the authority of supercargo during the voyage.

Assumpsit [by Smedley's executor against W. Yeaton], for not delivering fifty barrels of flour, shipped on board the defendant's schooner, Hero, for Barbadoes, consigned to the master, W. Sowle. The pumps being choked by corn, 113 barrels of the cargo of flour were damaged. The vessel put into Norfolk, where the damaged flour was taken out and sold, and the same number of barrels of good flour put on board in place of the damaged flour.

In order to prove the replacing of the flour, Mr. Taylor, for defendant, offered to read in evidence an account rendered by J. R. Harwood, of the sales of 113 barrels of damaged flour, and the supply of 113 barrels of good flour, which account was verified in the usual manner by the signature of W. Sowle, the master and consignee, who died before the trial.

Mr. Hewitt, for plaintiff, objected that it was the mere act of the master, in his character of master of the defendant's vessel, and not in his character of consignee, which did not arise, nor did his agency for the shipper commence until the arrival of the flour at Barbadoes.

Taylor & Mason, for defendant, contended that the master, who was consignee, had thereby the authority of supercargo to re-

[1] [Reported by Hon. William Cranch, Chief Judge.]

ceive the good flour in lieu of the damaged; and that his certificate or acknowledgment of the receipt of the flour was evidence for the defendant.

And of that opinion was THE COURT (THRUSTON, Circuit Judge, contra). See Biggs v. Lawrence, 3 Term R. 454.

SMILAX. The (WILMER v.). See Case No. 17,777.

SMILEY (UNITED STATES v.). See Case No. 16,317.

## Case No. 12,966.

### Ex parte SMITH.

[3 App. Com'r Pat. 414.]

Circuit Court, District of Columbia. Dec. 21, 1860.

#### PATENTS—PATENTABILITY—NOVELTY AND UTILITY

[Smith's invention of an improvement in iron pavements by laying the blocks or plates so separated from each other that one or more may be readily taken up, without injury, possesses utility and patentable novelty.]

[Appeal by Barzellai C. Smith from a decision of the commissioner of patents refusing to grant him a patent for improvements in iron pavements.]

DUNLOP, Chief Judge. This is an appeal to me from the decision of the commissioner refusing a patent to B. C. Smith, for improvements in iron pavements. Mr. Smith does not claim the "fastening the plates or blocks of pavements by mortises and tenons, or dowels, or their equivalents," but his claim is in fact limited to a mode of laying such blocks of iron pavements as follows, to wit: "An iron pavement composed of a series of plates, laid a given distance apart from each other, and having projections and recesses, so proportioned to that distance that one of the plates may be readily removed, after a slight lateral movement of the adjacent plates, as herein set forth."

The question presented on this appeal is within a very narrow compass. Mr. Smith claims to have invented a mode of laying pavements of iron, by which, without disturbing the body of the pavement, particular plates may be taken up and replaced at small cost, to lay down and repair, in cities and towns, under ground sewers, water and gas pipes. Heretofore, the iron plates, as shown in the references given by the office, have been laid, iron to iron, fastened together by tenons and mortises, so as to fit close, and therefore costly and difficult to get up, without fracture, when the purposes above referred to called for their removal. Smith's mode is to lay the plates about an eighth of an inch apart, and to proportion the mortises and tenons to that distance, filling up the interstices, with sand, gravel, or such; making when so filled up, an equally solid and compact pavement. When a